Michael F. Snyder, Esquire
John J. Sullivan, Esquire
VOLPE AND KOENIG, P.C.
United Plaza, 30 S. 17th St.
Philadelphia, Pa 19103
Tele: 215-568-6400
Fax: 215-568-6499

*Attorneys for Plaintiff,*
*Buzz Bee Toys, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BUZZ BEE TOYS, INC., | CIVIL ACTION NO. |
| | 1:14-cv-01948-JBS-KMW |
| Plaintiff, | |
| | |
| v. | Hon. Jerome B. Simandle, U.S.D.J. |
| | Hon. Karen M. Williams, U.S.M.J. |
| SWIMWAYS CORPORATION | |
| and TARGET CORPORATION, | JURY TRIAL DEMANDED |
| | |
| Defendants. | |

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTIVE RELIEF AGAINST DEFENDANTS SWIMWAYS CORPORATION AND TARGET CORPORATION

3041413-1

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   BUZZ BEE'S SHOWING OF NON-FUNCTIONALITY REMAINS
      UNREFUTED.........................................................................................2

III.  BUZZ BEE HAS SHOWN SECONDARY MEANING IN ITS TRADE
      DRESS ...................................................................................................4

IV.   DEFENDANTS' HAVE NOT OVERCOME THE CLEAR LIKELIHOOD
      OF CONFUSION BETWEEN THE PARTIES' TRADE DRESS ON
      COMPETING PRODUCTS ...................................................................8

      A.    Defendants Ignore Post-Sale Confusion ..................................8

      B.    Alleged Differences In Packaging or Labeling Do Not Dispel
            Confusion In This Case ............................................................9

      C.    Defendants Cannot Eliminate Intent From The Likelihood of
            Confusion Inquiry...................................................................13

      D.    A Review Of Third Party Products Shows The Strikingly Close
            Proximity Of Buzz Bee's and Defendants' Products, And The
            Uniqueness Of Buzz Bee's WATER WARRIORS Trade Dress........14

      E.    The ARGON Trade Dress And XENON Trade Dress Have Never
            Been Abandoned ....................................................................15

IV.   THERE IS SIGNIFICANT IRREPARABLE HARM TO BUZZ BEE IF AN
      INJUNCTION IS NOT GRANTED .........................................................16

      A.    Defendants Will Suffer No Irreparable Harm....................19

V.    CONCLUSION.....................................................................................20

i

# Table of Authorities

## Cases

*Am. Bev. Corp. v. Diageo N. Am., Inc.*
     936 F. Supp. 2d 555 (W.D. Pa. 2013) ...........................................................7

*American Greetings Corp. v. Dan-Dee Imports, Inc.*
     807 F.2d 1136 (3d Cir. 1986) ......................................................................3

*Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*
     2014 U.S. Dist. LEXIS 1030 (S.D.N.Y. Jan. 6, 2014) ...................................7

*Blumenthal Distrib. v. Exec. Chair, Inc.*, CV-10-1280 (CBA) 2010 U.S. Dist.
     LEXIS 142193 (E.D.N.Y. Nov. 9, 2010) .....................................................6

*Body Support Sys. v. Blue Ridge Tables*
     934 F. Supp. 749, 757 (N.D. Miss. 1996) ...................................................10

*Bose Corp. v. Linear Design Labs, Inc.*
     467 F.2d 304 (2d Cir. 1972) .......................................................................10

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*
     348 F. Supp. 2d 217, 243 (S.D.N.Y. 2004) ...................................................7

*Chanel, Inc. v. Pu*
     2009 WL 722050 (D. Kan. Mar. 18, 2009) .................................................19

*Checkpoint Sys. v. Check Point Software Techs., Inc.*
     Civil Action No. 96-3153 (JBS), 1999 U.S. Dist. LEXIS 23621
     (D.N.J. Oct. 28, 1999) ................................................................................8

*Chemlawn Services Corp. v. CL Licensing Corp.*
     690 F. Supp. 1560, 1571-72 (S.D. Tex. 1988) ............................................20

*Choice Hotels, Int'l Inc. v. Patel*
     940 F. Supp. 2d 532 (S.D. Tex. 2013)..........................................................17

*Coach, Inc. v. Bags & Accessories*
No. 10-2555 (JBS-JS), 2011 U.S. Dist. LEXIS 52767
(D.N.J. May 17, 2011) (Simandle, C.J.)......................................................16

*Coach, Inc. v. Fashion Paradise, LLC*
No. 10-4888 (JBS/KMW), 2012 U.S. Dist. LEXIS 7429
(D.N.J. Jan. 20, 2012) (Simandle, C.J.)......................................................16

*Coach, Inc. v. Ocean Point Gifts*
No. 09-4215 (JBS), 2010 U.S. Dist. LEXIS 59003
(D.N.J. June 14, 2010) (Simandle, C.J.)......................................................16

*Daddy's Junky Music Stores v. Big Daddy's Family Music Ctr.*
109 F.3d 275, 283 (6th Cir. 1997) .............................................................11

*Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd.*
40 F.3d 1431 (3d Cir. 1994) .........................................................................4

*eBay Inc. v. MercExhange, Llc*
547 U.S. 388, 391 (2006) ....................................................................16, 17

*Eisai Co. v. Teva Pharms. USA, Inc.*
No. 05-5727), 2008 U.S. Dist. LEXIS 33747 (D.N.J. Mar. 28, 2008) .........17

*Euro-Pro Corp. v. Tristar Prods., Inc.*
172 F.Supp.2d 567 (D.N.J. 2007)................................................................5

*Ford Motor Co. v. Summit Motor Products, Inc.*
930 F.2d 277, 292 (3d Cir. 1991) ...............................................................4

*Han Beauty, Inc. v. Alberto-Culver Co.*
236 F.3d 1333 (Fed. Cir. 2001) .................................................................14

*Happy Sumo Sushi, Inc v. Yapona, Inc.*
2008 WL 3539628 (D. Utah Aug. 11, 2008)..............................................19

*The Katiroll Co., Inc. v. Kati Roll and Platters, Inc.*
No. 10-3620 (GEB), 2011 U.S. Dist. LEXIS 9571 (D.N.J. Feb. 1, 2011)..6, 7

iii

*Keds Corp. v. Renee Intern. Trading Corp.*
888 F.2d 215 (1st Cir. 1989)......................................................................9, 11

*Kos Pharms., Inc. v. Andrx Corp.*
369 F.3d 700, 725 (3d Cir. 2004) ...............................................................8

*Lettuce Entertain You Enters. v. Leila Sophia AR, LLC*
703 F. Supp. 2d 777 (N.D. Ill. 2010)...........................................................17

*Levi Strauss & Co. v. Blue Bell, Inc.*
632 F.2d 817 (9th Cir. 1980) .......................................................................11

*McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*
511 F.3d 350 (3d Cir. 2007) ...............................................................8, 9, 12

*McNeil Nutritionals, LLC v. Heartland Sweeteners LLC*
566 F. Supp. 2d 378 (E.D. Pa. 2008) .......................................................4, 20

*McNeil-Ppc, Inc. v. Merisant Co.*
No. 04-1090 (JAG), 2004 U.S. Dist. LEXIS 27733(D.P.R. July 29, 2004) ..9

*Neuros Co. v. KTurbo, Inc.*
No. 08-cv-5939, 2013 U.S. Dist. LEXIS 56095 (N.D. Ill. 2013) ................17

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*
920 F.2d 187, 196-97 (3d Cir. 1990)......................................................16, 17

*Palm Bay Imps. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*
396 F.3d 1369, 1373-1374 (Fed. Cir. 2005)................................................14

*Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*
143 F.3d 800, 805 (3d Cir. 1998) ...............................................................16

*Pierre & Carlo, Inc. v. Premier Studios, Inc.*
713 F. Supp. 2d 471, 486 (E.D. Pa. 2010)...................................................17

*Rebel Debutante LLC v. Forsythe Cosmetic Grp.*
799 F. Supp. 2d 558, 579-80 (M.D.N.C. 2011)............................................17

iv

*Stuart Hall Co. v. Ampad Corp.*
    51 F.3d 780, 789 (8th Cir. Mo. 1995) ............................................................5

*Traffix Devices v. Mktg. Displays*
    532 U.S. 23, 33 (2001) ....................................................................3, 4

*T&T Mfg. Co. v. Jonathan Bradley Pens, Inc.*
    449 F. Supp. 813, 822-823 (D.R.I. 1978) ....................................10

*TriMark USA, Inc. v. Performance Food Grp. Co.*
    667 F. Supp. 2d 155, 169 (D. Mass. 2009)....................................17

*Tyco Indus., Inc. v. Tony Love, Ltd.*
    914 F.Supp. 1068 (D.N.J. 1996)................................................5, 6

*U.S. Jaycees v. Philadelphia Jaycees*
    639 F.2d 134, 139 (3rd Cir. 1981)................................................15

*Versa Prods. Co. v. Bifold Co.*
    50 F.3d 189, 203 (3d Cir. 1995) ........................................9, 12, 13

*VMG Enterprises, Inc. v. F. Quesada & Franco, Inc.*
    788 F. Supp. 648, 660 (D.P.R. 1992) ............................................10

*Winter v. Natural Resources Defense Council*
    129 S. Ct. 365 (2008)................................................................17

**Statutes**

15 C.F.R. § 1150.2 ................................................................................2, 3

15 U.S.C. 1052(f) ....................................................................................5

v

## I.    INTRODUCTION[1]

Defendants Brief in Opposition to Plaintiff's Motion for Preliminary Injunction ("Opposition Brief," ECF No. 29) is an exercise in distractions, wholly ignoring the similarity of the appearances of the products at issue.  Most of the evidence submitted *by Defendants* demonstrates not only the acquired distinctiveness of Buzz Bee's trade dress, but also that confusion and irreparable harm are manifest.

Defendants' explanation of the genesis of Swimways' Infringing Line strains credulity.  (Opposition Brief, at 3-4).  According to their undocumented story, in preparing to displace Buzz Bee at Target, Swimways *happened* to: (i) select an unidentified manufacturer that, as fate would have it, offered direct knock-offs of Buzz Bee's water squirting toys, including exact copies of models previously sold at Target, and (ii) showed those same copies to Target at the same time and place as Buzz Bee.  Target, completely familiar with Buzz Bee and its products, just *happened* to be involved in the design of Swimways' toys.  This string of coincidences is difficult, if not impossible, to believe.

While Buzz Bee attended a product line review with Target in July 2013, Buzz Bee had no access to any other company's products.  (Second Zimmerman

---

[1]    Buzz Bee relies upon the same defined terms as in is opening Memorandum of Law in Support of Motion for Preliminary Injunction ("Memorandum of Law," ECF No. 12), for ease of reference.

Dec., ¶ 22).  Of course, Target *did* have the opportunity observe the different products lines, and had to have known of the close resemblance between the parties' water squirting toys.  *Id*.  It is likely that is why Target is silent now.[2] Defendants' story cannot disprove that Swimways' Infringing Line is an obvious copy of Buzz Bee's WATER WARRIORS Line, copying Buzz Bee's products down to the smallest detail.

## II.    BUZZ BEE'S SHOWING OF NON-FUNCTIONALITY REMAINS UNREFUTED

As a threshold matter, that the internal water squirting mechanisms of Buzz Bee's WATER WARRIORS Line (and most water squirting toys) cannot be viewed externally is not a "conclusory statement"- it is an inarguable fact.  (Second Zimmerman Dec., ¶ 31-32).

In an attempt to manufacture functionality where none exists, Defendants' set up a series of straw men.  First, Defendants cite to 15 C.F.R. § 1150.2 for the premise that certain toy gun coloring is mandated by law.  (Opposition Brief, at 13-14).  Buzz Bee does not claim any of the mandated elements listed in 15 C.F.R. § 1150.2 as part of Buzz Bee's WATER WARRIORS Trade Dress in this matter.  Those regulations are therefore meaningless.  Significantly, there is nothing in 15

---

[2]    Interestingly, Target, an admitted driving force in the design of Swimways' Infringing Line, has not submitted *any* evidence or declarations, corroborating Swimways' story or otherwise.  Target's utter silence speaks volumes.

2

C.F.R. § 1150.2 that mandates the overall *ornamental design* of a water squirting toy.

Next, Defendants point to a few elements of water squirting guns that arguably perform functions (*i.e.*, "can do things"),[3] without referring to the *appearance* of those elements. There is nothing in the record demonstrating that in order to function as a water shooter, Swimways, or other competitors, *must* use the nozzle, water reservoir, grips and trigger guards *that look like* the Buzz Bee's WATER WARRIORS Trade Dress.[4] All competing water shooters in the relevant market segment shoot water; that is why a distinctive appearance identifying a specific source is so critical. (Second Zimmerman Dec., ¶ 41).

Defendants have not made any showing that the *overall appearance* of the trade dress of any of Buzz Bee's WATER WARRIORS Line "is essential to the use or purpose of the device or when it affects the cost or quality of the device" or the right to use it exclusively "would put competitors at a significant non-reputation-related disadvantage." *Traffix Devices v. Mktg. Displays*, 532 U.S. 23,

---

[3]    As the Third Circuit Court of Appeals has recognized, "virtually every product is a combination of functional and non-functional features and a rule denying protection to any combination of features including a functional one would emasculate the law of trade dress infringement." *American Greetings Corp. v. Dan-Dee Imports, Inc.*, 807 F.2d 1136, 1143 (3d Cir. 1986).

[4]    The water shooting toys sold *directly next to* Swimways' water shooting toys at Target, for example, were not compelled by functional requirements to copy the *appearance* of Buzz Bee's nozzle, water reservoir, grips and trigger guards- yet those products have each of these parts. (*See* Declaration of Michael F. Snyder ("Snyder Dec."), Ex. 5).

3

33 (2001). The overall appearance[5] of the Buzz Bee's WATER WARRIORS Trade Dress is not functional under any applicable standard. The collection of purely ornamental design elements Buzz Bee has identified as its trade dress do not serve any function other than distinguishing Buzz Bee's toys from competitors', signifying that the toys come from a particular source.[6]

## III.  BUZZ BEE HAS SHOWN SECONDARY MEANING IN ITS TRADE DRESS

Contrary to Swimways' limited view [7], courts in this Circuit have consistently identified and applied a *non-exclusive* list of no less than eleven (11) different factors that may be considered in making secondary meaning determinations. *See, e.g., Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 292 (3d Cir. 1991). Buzz Bee has presented evidence supporting a finding of secondary meaning for several of these factors, and certainly enough at this stage for the Court to find a likelihood that that Buzz Bee will demonstrate

---

[5]    In considering functionality, trade dress is a "complex composite of features and the law of unfair competition in respect to trade dress requires that all of the features be considered together, not separately." *McNeil Nutritionals, LLC v. Heartland Sweeteners LLC*, 566 F. Supp. 2d 378, 393 (E.D. Pa. 2008) (other citations omitted).

[6]    The availability of alternative designs is another factor showing non-functionality. *See TrafFix*, 532 U.S. at 33-34.

[7]    Swimways cites *Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd.*, 40 F.3d 1431 (3d Cir. 1994), to wrongly imply that courts in the Third Circuit only review three particular factors when making secondary meaning determinations. As noted above, these three factors do not properly represent all variables that may be considered. *Duraco* involved a plastic urn which was effectively found to be generic. (See Snyder Dec., Ex. 6).

4

secondary meaning at trial. Defendants ignore or undervalue the evidence provided by Buzz regarding at least length and exclusivity of use, sales, third-party advertising, consumer and third party recognition, and intentional copying.[8]

First, Buzz Bee's WATER WARRIORS Line has survived for many years in a market segment where the parties agree that product line changes normally occur every season.[9] (Second Zimmerman Dec., ¶¶ 38-40; Balam Dec., ¶ 30). This is strong evidence of the potency of the Buzz Bee's WATER WARRIORS Trade Dress, which have become staples of Buss Bee's product line. *Id.*, ¶ 43. Until Swimways' infringing acts, Buzz Bee captured approximately 35% of the market that covers the water shooter segment. (Second Zimmerman Dec., ¶ 49).

Regarding advertising, raw advertising expenditure numbers are not required.[10] Instead, the focus should be on the overall extent of advertising,

---

[8] Although the story is unbelievable, Defendants' argument is that they did not themselves do the intentional copying. They do not deny that the products were, perhaps by the mysterious, unnamed "manufacturer," intentionally copied.

[9] As other courts have done, Buzz Bee suggested looking to 15 U.S.C. 1052(f) as a "yardstick" in considering the length of time accepted for establishing secondary meaning. *Stuart Hall Co. v. Ampad Corp.*, 51 F.3d 780, 789 (8th Cir. Mo. 1995). This does not create a presumption, but the 5-year time period does support a finding of secondary meaning. *Id.*

[10] Swimways cites two cases as support for the idea that even significant advertising is not sufficient to show secondary meaning. *See Euro-Pro Corp. v. Tristar Prods., Inc.*, 172 F.Supp.2d 567 (D.N.J. 2007); *Tyco Indus., Inc. v. Tony Love, Ltd.*, 914 F.Supp. 1068 (D.N.J. 1996). Both of these cases are readily distinguishable. In *Euro-Pro*, the court's denial of plaintiff's motion for preliminary injunction was not based on the scope of advertising expenditures, but instead hinged on the fact that plaintiff had only been offering the product at issue

regardless of the source. Due to the nature of a particular market segment or customer make-up, non-traditional or indirect advertising, such as by third parties, is as acceptable as "direct" marketing. *See, e.g., The Katiroll Co., Inc. v. Kati Roll and Platters, Inc.*, No. 10-3620 (GEB), 2011 U.S. Dist. LEXIS 9571, \*\*25-27 (D.N.J. Feb. 1, 2011) (only one paid advertisement, secondary meaning found) (Hon. Garrett E. Brown, Jr.) (*unpub.*); *Blumenthal Distrib. v. Exec. Chair, Inc.*, CV-10-1280 (CBA) 2010 U.S. Dist. LEXIS 142193 (E.D.N.Y. Nov. 9, 2010).

Buzz Bee has shown third-party advertising on its behalf, including, but not limited to, widespread references to and displays of Buzz Bee's WATER WARRIORS Line on the Internet, including advertising on the websites of large retailers. (Second Zimmerman Dec., ¶ 63). Retailers feature Buzz Bee's products in their own print advertising, such as sales circulars, which has a significant value estimated at $500,000 per year if a company was to pay for such ad space. *Id.*, ¶ 62. Buzz Bee and others in the industry depend on resellers such as Wal-Mart and Target, who have direct contact with the customers, to advertise the products. *Id.*, ¶ 65. In addition, water shooter blogger and fan websites consistently feature Buzz Bee's WATER WARRIORS Line as one of the major and well known company's

---

for one year. Similarly, in *Tyco*, the court discussed plaintiff's advertising expenditures in the context of determining whether irreparable harm existed, and *not* with respect to secondary meaning. *Id.* at 1082. The court rejected plaintiff's secondary meaning claim because it deemed the blanket product at issue to be functional. *Id.*

6

in the relevant market segment. *Id.*, ¶ 64. In the world of the internet or the "new media," this type of unsolicited "press" supports a finding of secondary meaning.

Defendants' argument that sales figures, whether units or dollars, should be ignored is wholly without merit and is contrary to the applicable law. *See, e.g., The Katiroll Co.*, 2011 U.S. Dist. LEXIS 9571 at **25-27 (sales volume and customer traffic relative to industry support a finding secondary meaning). The sales cited by Buzz Bee are equal to or greater than sales relied upon by courts as supporting a finding of secondary meaning.[11]

It is no surprise that Defendants seek to distract the Court from the obvious intentional copying in this case, which at a minimum, corroborates the other evidence Buzz Bee has presented in support of secondary meaning.[12] As one court in this Circuit recently recognized, such intentional copying remains <u>strong</u> evidence of secondary meaning.[13] *Am. Bev. Corp. v. Diageo N. Am., Inc.*, 936 F. Supp. 2d 555, 602 (W.D. Pa. 2013).

---

[11]   In addition, it is important that recognize that this is a niche market segment, and the products are inexpensive. Therefore, large unit sales do not translate to large dollar sales.

[12]   Third party copying is also considered indicia of secondary meaning. *Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*, 2014 U.S. Dist. LEXIS 1030, *25 (S.D.N.Y. Jan. 6, 2014); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 243 (S.D.N.Y. 2004).

[13]   Since all water shooting toys shoot water, common sense dictates that Buzz Bee was targeted due to the consumer appeal of the distinctive look of Buzz Bee's WATER WARRIORS Trade Dress.

## IV.  DEFENDANTS' HAVE NOT OVERCOME THE CLEAR LIKELIHOOD OF CONFUSION BETWEEN THE PARTIES' TRADE DRESS ON COMPETING PRODUCTS

In the water shooter market segment, *looks matter*.  (Second Zimmerman Dec., ¶ 37-44, 60-61).  However, Defendants attempt to have the Court ignore the product similarities and improperly focus on minutiae to "un-find" the manifest likelihood of confusion.  This could lead to an improper balancing of the *Lapp* factors.  *See, e.g., McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 367 (3d Cir. 2007), citing Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 725 (3d Cir. 2004).

### A.    Defendants Ignore Post-Sale Confusion

Glaringly absent from Defendants' Opposition Brief is any discussion of the *appearance* of Swimways' Infringing Line and Buzz Bee's WATER WARRIORS Trade Dress, or the likelihood of *post-sale* confusion.  Post-sale confusion occurs when consumers view a product outside the context in which it is originally distributed and confuse it with another, similar product.  *Checkpoint Sys. v. Check Point Software Techs., Inc.*, Civil Action No. 96-3153 (JBS), 1999 U.S. Dist. LEXIS 23621, **24-25 (D.N.J. Oct. 28, 1999).  Once a youth inevitably and immediately removes its water squirting toy from the minimal open packaging (Second Zimmerman Dec., ¶¶ 44, 45, 61), the likelihood of post-sale confusion increases exponentially.

3041413-1

**B.    Alleged Differences In Packaging or Labeling Do Not Dispel Confusion In This Case**

In Defendants' view, any product can be copied precisely, so long as the copier slaps their own logo on the copied product.  Even though a consideration of the packaging, labeling and advertising is required to determine whether enough was done to eliminate confusion, *see Versa Prods. Co. v. Bifold Co.*, 50 F.3d 189, 203 (3d Cir. 1995)[14], the law has never accepted such blatant piracy.  Particularly in the case of knock-off toy products, a new paint job and a few stickers is not legally sufficient to overcome identity under the first *Lapp* factor.  Moreover, packaging is not significant to consumers in this market segment, and is discarded upon use.  (Second Zimmerman Dec., ¶¶ 44, 60-61).

Swimways' logo is virtually imperceptible on the packaging or the product in a commercial setting.[15]  Snyder Dec., Exs. 1-4; s*ee Keds Corp. v. Renee Intern. Trading Corp.*, 888 F.2d 215, 222-23 (1st Cir. 1989) (labels "where the impressed

---

[14]    Other than a few very particular aspects of the *Lapp* factors discussed in *Versa Prods. Co. v. Bifold Co.*, 50 F.3d 189, 203 (3d Cir. 1995)[14] as they relate to product configuration, established trademark and trade dress law still applies. Notably, the Third Circuit cited *extensively* to many seminal *trademark* cases in its more recent trade dress opinion in *McNeil Nutritionals, LLC,* 511 F.3d at 350.

[15]    Even if Swimways name could be seen, courts have repeatedly held that the presence of the defendant's brand name on look-alikes does not prevent a finding of likely confusion. As another court in this Circuit stated, "the argument that the addition of defendant's house mark prevents likely confusion has been labeled a 'smoke screen' and a 'poor excuse' for a blatant infringement because customers are likely to think that the plaintiff had authorized the defendant's use of the mark." *McNeil-Ppc, Inc. v. Merisant Co.*, No. 04-1090 (JAG), 2004 U.S. Dist. LEXIS 27733, **48-49 (D.P.R. July 29, 2004) (citation omitted).

9

words can only be read a few feet away from the eyes" insufficient to eliminate likelihood of confusion).  Where there is a "striking similarity" between the products at issue, as there is here, a more pronounced display of the product's source would be necessary to dispel confusion. *See Body Support Sys. v. Blue Ridge Tables*, 934 F. Supp. 749, 757 (N.D. Miss. 1996).[16]

This is not an industry where packaging is critical.  (Second Zimmerman Dec., ¶¶ 44-46).  Viewed in a commercial setting, the similarities of the parties' packaging-- *which includes the actual products*-- outweigh any differences. (*See* Snyder Dec., Exs. 1-4).  There can be no denying that the products themselves dominate the packaging, and not the other way round, with the package indicia virtually illegible on a store shelf. *Id*. The facing panels of Swimways' packaging have very little surface area to display indicia (Second Zimmerman Dec., ¶ 45), and the design elements are, in fact, the same as Buzz Bee's, showing water shooting distance, water reservoir size, identical product orientations, and

---

[16]    Defendants cite *Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304 (2d Cir. 1972) as support for an argument that the addition of any labeling eliminates a likelihood of confusion.  *Bose* concerned design patents and trade dress for loudspeakers. The court acknowledged key differences between the look of the loudspeakers at issue, and plaintiff's trade dress argument hinged on defendant's *initial* failure to clearly label its products with its brand name.  In contrast, in cases where the product configurations are highly similar, such as here, the addition of a label or name does not excuse existing likelihood of confusion, and in fact, makes a "mockery" of trademark law.  *See, e.g., T&T Mfg. Co. v. Jonathan Bradley Pens, Inc.*, 449 F. Supp. 813, 822-823 (D.R.I. 1978); *VMG Enterprises, Inc. v. F. Quesada & Franco, Inc.*, 788 F. Supp. 648, 660 (D.P.R. 1992).

10

photographs of children using the products in the same positioning and orientation. (*See* First Zimmerman Dec., ECF No. 13, Exs. R, U, W, Y; Snyder Dec., Exs. 1-4). On a store shelf, the differences become insignificant.  (*See* Snyder Dec., Exs. 1-4). When removed from the packaging and held by a youth, any alleged differences vanish.

Defendants pay lip service to the proper test for comparing trade dress, and then urge the Court to engage in an improper and myopic side-by-side consideration of minor differences in the parties' packaging.  In order to dispel confusion when the trade dress is so close, any significantly different features of the packaging or labeling relied upon by an alleged infringer must effectively dominate the similarities in the trade dress.  *See, e.g., Keds Corp.*, 888 F.2d at 222-223; *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir. 1980).  The packaging selected by Swimways does not allow for meaningful differentiation. Swimways is admittedly not a known "player" in the relevant market segment, and there is no indication that, in a few short months, consumers rely upon Swimways' packaging or labeling as a newcomer to Buzz Bee's field. (See Second Zimmerman Dec., ¶¶ 15-18; 56).  Consumers are not expected to memorize one party's trade dress so that they can later compare it to an infringing product.  *See Daddy's Junky Music Stores v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 283 (6th Cir. 1997) (noting that consumers may have "a general, vague, or even hazy,

11

impression or recollection of the other party's mark") (internal quotation marks, citation omitted).

The importance placed on labeling in *Versa* is readily distinguishable from the instant case.[17] The goods at issue in *Versa* were directional control valves, used in control panels of offshore oil-drilling rigs to facilitate emergency shutdowns. (*See* Snyder Dec., Ex. 7). Those goods are entirely different in kind from toy water shooters, and certainly not the fanciful toys shown in the exhibits in this matter. Here, it is agreed the target customers are children, and a low degree of care would be expected. (Second Zimmerman Dec., ¶ 37).

As set forth by the court in *Versa*, it is important to take into consideration the different *nature* of the products relative to the specific labeling when assessing the impact of such labeling on likelihood of confusion. The court in *Versa* closely analyzed the adequacy of the labeling by looking at several factors relating to the level of care expected of consumers *in relation to the goods at issue. See Versa*, 50 F.3d at 213-14. These included the following: (i) "[N]ot a case where the items are relatively inexpensive"; (ii) The "valves were not sold on a shelf or selected on sight"; (iii) "Buyers order the valves based on functional specifications"; The

---

[17]    Other than a few very particular aspects of the *Lapp* factors discussed in *Versa Prods. Co. v. Bifold Co.*, 50 F.3d 189, 203 (3d Cir. 1995)[17] as they relate to product configuration, established trademark and trade dress law still applies. Notably, the Third Circuit cited *extensively* to many seminal *trademark* cases in its more recent trade dress opinion in *McNeil Nutritionals, LLC,*  511 F.3d at 350.

12

"valves can be purchased only by specifying a multi-digit part number"; (iv) "[T]he purchasers and users of Versa's… valves are qualified knowledgeable personnel"; (v) "The appearance of these [the] valves simply plays no role in the ordering process, which instead requires the use of detailed specifications and lengthy manufacturer-specific part numbers."; and (vi) The "valves are not bought by children or casual consumers". *Id.* (internal quotations and citation omitted). None of the above factors is present in a case like this involving inexpensive toy water shooters that are purchased after viewing the goods in open faced boxes on retail store shelves.

Most importantly, the Versa court recognized that "the weight given to each factor in the overall picture, as well as its weighing for a plaintiff or defendant, must be done on an individual fact-specific basis." *Versa*, 50 F.3d at 203 n. 12.

## C.   Defendants Cannot Eliminate Intent From The Likelihood of Confusion Inquiry

Here, the intent to confuse or deceive has been demonstrated by clear and convincing evidence, which has not been rebutted.  This is not a situation where the knock-offs are hidden from view inside a closed box.  Thus, the products' labeling and marketing should also be considered to be misleading, playing nothing more than a minor role in showing the infringing products.  The circumstances surrounding the appearance of Swimways Infringing Line's on Target store shelves with Buzz Bee knock-offs must also be considered. (Second

Zimmerman Dec., ¶¶ 15-22). Defendants have never explained the need for such precise copying other than an intent to confuse consumers that one product is, in fact, related to the other. In order to rush to market in the time frames identified, with no independent research or development, intentional copying was a must. (Second Zimmerman Dec., ¶ 21).

> **D.    A Review Of Third Party Products Shows The Strikingly Close Proximity Of Buzz Bee's and Defendants' Products, And The Uniqueness Of Buzz Bee's WATER WARRIORS Trade Dress**

Defendants point to a scattered handful of third party water squirting toys as somehow undercutting the distinctiveness of the Buzz Bee's WATER WARRIORS Trade Dress, and giving Defendants permission to offer knock-offs.[18] Upon review, these only bring Defendants' infringement under more scrutiny.

Defendants have identified a counterfeit, like Swimways, of which Buzz Bee was unaware. (Balam Dec. Exs. E, F and I). A lawsuit will shortly be filed against that infringer. (Second Zimmerman Dec., ¶¶ 24-25). Buzz Bee is gathering information to pursue another potential infringer identified by Defendants. (Balam Dec. Ex. M) (Second Zimmerman Dec., ¶ 29). Defendants have also identified

---

[18]    Defendants have not shown the extent of use of any third party product cited in the Opposition Brief. The probative value of third-party trade dress depends entirely upon usage. *See, e.g., Palm Bay Imps. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1373-1374 (Fed. Cir. 2005) (citation omitted). Where the "record includes no evidence about the extent of [third-party] uses… the probative value of this evidence is thus minimal." *Han Beauty, Inc. v. Alberto-Culver Co.*, 236 F.3d 1333, 1338 (Fed. Cir. 2001) (emphasis added).

14

potentially infringing products which appear to be available in China, with no showing that the products are even available in the United States. (Balam Dec. Exs. J, L). It is exceedingly difficult to put a meaningful stop to infringers emanating from China. (Second Zimmerman Dec., ¶¶ 27-28).

Finally, Defendants, cite to third party water squirting toys that do not resemble Buzz Bee's WATER WARRIORS Trade Dress, throwing Defendants' own infringement into even starker contrast. (Balam Dec., Exs. G, H). This also demonstrates the fact that it is possible to offer a competing toy without copying Buzz Bee's WATER WARRIORS Trade Dress.

It is a certainty that Defendants desperately scoured the internet in hopes of finding some support for a "third party use" defense. Defendants' failed search highlights the unique nature of Buzz Bee's WATER WARRIORS Trade Dress.

### E. The ARGON Trade Dress And XENON Trade Dress Have Never Been Abandoned

Defendants "abandonment" argument is a red-herring, and Defendants cite to only a part of the test for trademark or trade dress abandonment. A party asserting abandonment must prove: 1) discontinuance of the mark's use; **and** 2) an intent not to resume use within a reasonably foreseeable time. *U.S. Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 139 (3rd Cir. 1981).[19] Sales of the ARGON

---

[19]    Abandonment, "being in the nature of a forfeiture, must be strictly proved," and the burden of proof is on the party claiming abandonment. *Id.* at 139.

and XENON water squirting toys only ceased due to a patent infringement lawsuit. Respecting the rights of the patent owner, Buzz Bee agreed to temporarily cease sales, and will re-launch both products in 2015.  (Second Zimmerman Dec., ¶ 36).

## IV.    THERE IS SIGNIFICANT IRREPARABLE HARM TO BUZZ BEE IF AN INJUNCTION IS NOT GRANTED

Although some courts have relied upon the Supreme Court's decision in the patent case *eBay Inc. v. MercExchange, Llc*, 547 U.S. 388, 391 (2006) to find that that there can be no presumption of irreparable harm in a trademark or copyright case where preliminary injunctive relief is sought, the Third Circuit has not ruled upon that interpretation.  In fact, as this Court has recognized on at least three occasions since the *eBay* decision:

> The Third Circuit has explicitly stated that "once the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury." *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 196-97 (3d Cir. 1990). Thus, because a likelihood of confusion has been shown, the requirement of irreparable harm has been met.

*Coach, Inc. v. Fashion Paradise, LLC*, No. 10-4888 (JBS/KMW), 2012 U.S. Dist. LEXIS 7429, *25 (D.N.J. Jan. 20, 2012) (Simandle, C.J.); *Coach, Inc. v. Bags & Accessories*, No. 10-2555 (JBS-JS), 2011 U.S. Dist. LEXIS 52767, *25 (D.N.J. May 17, 2011) (Simandle, C.J.); *Coach, Inc. v. Ocean Point Gifts*, No. 09-4215 (JBS), 2010 U.S. Dist. LEXIS 59003, *25 (D.N.J. June 14, 2010) (Simandle, C.J.).

In addition, *eBay* is distinguishable from a trademark or trade dress cases case involving preliminary injunction on the grounds that: (1) it involved a patent case and not a trademark case; (2) the injunction sought was permanent, not preliminary; (3) unlike the presumption in *eBay*, the presumption in trademark cases only extends to one out of four factors and is rebuttable. *Eisai Co. v. Teva Pharms. USA, Inc.*, No. 05-5727), 2008 U.S. Dist. LEXIS 33747, \*\*28-34 (D.N.J. Mar. 28, 2008) (*unpublished*); *Rebel Debutante LLC v. Forsythe Cosmetic Grp.*, 799 F. Supp. 2d 558, 579-80 (M.D.N.C. 2011). The decision in *Winter v. Natural Resources Defense Council*, 129 S. Ct. 365 (2008) is similarly distinguishable as that case did not involve trademark or trade dress or intellectual property.

There is no consensus among courts that *eBay* and *Winter* holdings should be extended to trademark or trade dress cases involving preliminary injunctive relief, and many courts continue to apply the presumption of irreparable harm.[20]

Even assuming, *arguendo*, that the Third Circuit's holding regarding the presumption as set forth in *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 196-97 (3d Cir. 1990) no longer applies, Buzz Bee readily satisfies *eBay*, as the irreparable harm to Buzz Bee is established in the Declaration

---

[20]    *See Pierre & Carlo, Inc. v. Premier Studios, Inc.,* 713 F. Supp. 2d 471, 486 (E.D. Pa. 2010); *Lettuce Entertain You Enters. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d 777, 790 (N.D. Ill. 2010); *TriMark USA, Inc. v. Performance Food Grp. Co.*, 667 F. Supp. 2d 155, 169 (D. Mass. 2009); *Choice Hotels, Int'l Inc. v. Patel*, 940 F. Supp. 2d 532, 542 (S.D. Tex. 2013); *Neuros Co. v. KTurbo, Inc.*, No. 08-cv-5939, 2013 U.S. Dist. LEXIS 56095 at \* 15 (N.D. Ill. 2013).

of Jeffrey Zimmerman ("First Zimmerman Dec.") and Second Declaration of Jeffrey Zimmerman ("Second Zimmerman Dec."). (See First Zimmerman Dec. ¶¶ 78 - 82 and Second Zimmerman Dec. ¶¶ 19, 39, 40, 47 – 59). More specifically, it is clear that Buzz Bee has invested substantial time, effort and resources in its trade dress which have been successful in the marketplace for many years. (*See* First Zimmerman Dec. ¶¶ 11–13, 24–26, 38–39 and 51–52 and Second Zimmerman Dec. ¶¶ 19, 39, 40, 43 and 49 - 50). This infringement by lower quality products has caused and is causing loss of market share and damages to Buzz Bee's reputation and the goodwill associated with its trade dress. (See First Zimmerman Dec. ¶¶ 78 - 82 and Second Zimmerman Dec. ¶¶ 48 - 53 and 59).

In addition, the parties are in the midst of both the buying (retailers from vendors) and selling seasons (consumers from retailers). (*See Second Zimmerman Dec.* ¶ 57). Both seasons will end for all intents and purposes by July 4th. *Id.* If the infringement is allowed to continue to that point, not only will Buzz Bee continue to be irreparably harmed by the loss of goodwill and market share, but the genie will be out of the bottle in that Buzz Bee will face an exponentially greater problem next season when a new round of knock-offs hit the marketplace because of the perceived loss of rights in Buzz Bee's WATER WARRIORS Trade Dress. (*See* Second Zimmerman Dec. ¶¶ 48 – 59). Courts have found irreparable harm in similar cases such as this even without a presumption or irreparable harm. *See also*

18

*Chanel, Inc. v. Pu, 2009 WL 722050,* at *8 (D. Kan. Mar. 18, 2009); *Happy Sumo Sushi, Inc v. Yapona, Inc., 2008 WL 3539628* (D. Utah Aug. 11, 2008) ("[T]the Court finds that Happy Sumo has shown irreparable harm by the loss of good will, business reputation, and loss of control over its trade dress. Unlike the undisputed loss of business, money damages will not adequately address these harms.").

Defendant's other argument that irreparable harm is inappropriate here because Buzz Bee failed to enforce its trademark rights has already been disproven, as outlined above, which establishes that argument has no basis in fact.

### A.    Defendants Will Suffer No Irreparable Harm

Swimways[21] argues that it will suffer irreparable harm if ordered to pull the infringing products from the shelves because the toy water shooting market is seasonal and it will be difficult to sell its products at a later date because of the changes in demand.    Although Buzz Bee agrees that the season is limited, Defendants' inability to resell the products is certainly overstated. (See Second Zimmerman Dec. ¶¶ 38, 39, and 42).

Finally, there is no other harm to Swimways alleged. By their own admission, Swimways' investment in developing the products was minimal; they only recently entered this marketplace; and there are products in the product line

---

[21]    Target has introduced no evidence of irreparable harm to itself in this case. This is likely because it is being represented by Swimways counsel which clearly indicates that, as is common in the industry, Swimways has indemnified Target. Thus, there is no potential harm of any kind to Target from unsold stock.

19

3041413-1

that are not subject to injunction.  In such cases, the balance of equities favors Buzz Bee who is in fact irreparably harmed if the preliminary injunction is not issued. *Chemlawn Services Corp. v. CL Licensing Corp.,* 690 F. Supp. 1560, 1571-72 (S.D. Tex. 1988).  The harm claimed by Swimways (Opposition Brief, at 32-33), is not considered to be irreparable harm.  *See McNeil Nutritionals, LLC,* 566 F. Supp. 2d at 394, *citing Kos*, 369 F.3d at 728.

## V.    CONCLUSION

In view of the foregoing, it is respectfully submitted that all sales, promotion and advertising of Swimways' infringing trade dress should be preliminarily enjoined.  A proposed order accompanies this Motion.

Respectfully submitted,

Dated: <u>May 9, 2014</u>                    By:  <u>s/Michael F. Snyder</u>
                                          Michael F. Snyder, Esquire
                                          John J. Sullivan, Esquire
                                          VOLPE AND KOENIG, P.C.
                                          United Plaza, 30 S. 17th St.
                                          Philadelphia, Pa 19103
                                          Tele: 215-568-6400
                                          Fax: 215-568-6499

                                          *Attorneys for Plaintiff,*
                                          *Buzz Bee Toys, Inc.*