```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| BUZZ BEE TOYS, INC., | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action<br>No. 14-1948 (JBS/KMW) |
| SWIMWAYS CORPORATION, et al., | **MEMORANDUM OPINION** |
| Defendants. | |

**SIMANDLE, Chief Judge:**

    Before the Court is Plaintiff's motion for reconsideration [Docket Item 50] of the Court's May 15, 2014 Opinion and Order [Docket Items 47 & 48]. Plaintiff's motion will be denied because Plaintiff has not shown that the Court made any clear errors of fact or law, that there is new evidence, or that there has been an intervening change in the controlling law. The Court finds the following:

    1.   Plaintiff Buzz Bee Toys ("Buzz Bee") brought this trade dress infringement action against Defendants Swimways Corporation ("Swimways") and Target Corporation ("Target"). Buzz Bee claims that Swimways copied four models of Plaintiff's WATER WARRIORS waterguns by using confusingly similar and infringing trade dresses and that Target now offers Swimways' infringing products instead of Plaintiff's products, which Target used to

offer.[1] Plaintiff sought a preliminary injunction precluding Defendants from selling Swimways' allegedly infringing products and ordering them to recall the infringing products. After a hearing, the Court denied Plaintiff's motion because Plaintiff had not shown that irreparable harm was likely and had not shown that its trade dresses have acquired secondary meaning. Buzz Bee Toys, Inc. v. Swimways Corp., --- F. Supp. 2d ---, Civ. 14-1948 (JBS/KMW), 2014 WL 2006799 (D.N.J. May 15, 2014) ("Buzz Bee I").

    2.   In its motion for reconsideration, Plaintiff argues that the Court incorrectly applied the secondary meaning test by ignoring the anonymous source rule and presuming that consumers must be able to identify the Buzz Bee company or WATER WARRIORS brand name. Plaintiff also argues that it did show a likelihood of irreparable harm and that the public interest favored an injunction. Plaintiff also requests reconsideration of "the test for secondary meaning as to product packaging where the product is part of open packaging." (Pl. Br. at 2.)

    3.   Defendants oppose [Docket Item 53] Plaintiff's motion. They argue that Plaintiff is re-litigating the same issues and asking the Court to re-weigh the evidence it previously

---

[1] The Court will not provide a lengthy recitation of facts in this Opinion and, instead, incorporates by reference Buzz Bee Toys, Inc. v. Swimways Corp., --- F. Supp. 2d ---, Civ. 14-1948 (JBS/KMW), 2014 WL 2006799 (D.N.J. May 15, 2014) ("Buzz Bee I").

2

considered, all of which are not permitted on a motion for reconsideration.[2]

  4. The Court will now turn to its analysis, explaining why Plaintiff's motion must be denied.

  5. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Reconsideration is warranted "if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [denied] the motion for [preliminary injunction]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). "A motion for reconsideration is not a vehicle to reargue the motion . . . ." Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 532 (D.N.J. 1998). "Because reconsideration . . . is an extraordinary remedy, requests pursuant to these rules are to be granted sparingly." NL Indus., Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996) (quotation omitted).

---

[2] Defendants' opposition also includes many Buzz Bee I quotations, which the Court will discuss further infra.

6. Plaintiff requests reconsideration of "the test for secondary meaning as to product packaging where the product is part of open packaging." Plaintiff's request is denied because the Court applied the correct secondary meaning test in Buzz Bee I. In Buzz Bee I, the Court classified the trade dresses at issue as product configuration, not product packaging, trade dresses. The Court observed that "the WATER WARRIORS trade dresses that Plaintiff described . . . all involve design features of the waterguns themselves, not the packaging in which they appear." Buzz Bee I, 2014 WL 2006799, at *10. The Court also quoted Plaintiff's president, who stated that "'the packaging for these products is not significant to customers. . . . the packaging is there to display the products. When sold online, these . . . products are almost invariably shown without the packaging.'" Id. Furthermore, the Court noted that "Plaintiff emphasized the likelihood of post-sale confusion once children play with the products, which also indicates that the trade dresses of the products themselves, not the packaging, are primarily at issue here." Id. Those facts clearly indicated that product configuration was the issue.

7. In addition, the Court relied on the Supreme Court's instruction that, in close cases, courts must classify trade dress as product design, not product packaging: "when there are arguments about both product-design and product-packaging trade

4

dress, '[t]o the extent there are close cases, . . . courts should err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning.'" Id. (quoting Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 215 (2000)). The Court will therefore deny Plaintiff's request for reconsideration of the secondary meaning test as to product packaging when the product is in open packaging. Plaintiff provided no reason to merit reconsideration and the Court's reasoning in Buzz Bee I was soundly based on Plaintiff's president's affidavit, Supreme Court jurisprudence, and the trade dresses themselves. There was no error of law or fact.

8. Plaintiff additionally argues that the Court applied the test for secondary meaning incorrectly because the Court ignored the anonymous source rule and presumed that, to establish secondary meaning, consumers must be able to identify the Buzz Bee company or WATER WARRIORS brand names. This argument is meritless.

9. The Court did not require evidence that consumers can identify Buzz Bee, the WATER WARRIORS brand, or the specific product names. The Court held that Plaintiff had not established secondary meaning "because there [wa]s a lack of evidence as to advertising of the specific trade dress claimed, as well as the lack of evidence demonstrating a conscious connection by the public between the claimed trade dress and the product's source

5

. . . Proof of secondary meaning requires at least <u>some</u> evidence that consumers associate the trade dress with the source." <u>Id.</u> at *11 (quotation omitted). The Court specifically stated that "[e]ven if consumers do not know the WATER WARRIORS brand or the individual product names, Plaintiff also has not shown that consumers recognize Plaintiff's trade dresses or associate them with a single source." <u>Id.</u> at *12.

10. The Court cited <u>Ideal Toy Corp. v. Plawner Toy Mfg. Corp.</u>, 685 F. 2d 78 (3d Cir. 1982), in which the Third Circuit held that secondary meaning existed because "there was copying, plaintiff Ideal had invested $2,000,000.00 in advertising and sold over 5,000,000 units in one year, consumer survey data showed that 40 percent of respondents mistakenly identified the defendant's imitation as [plaintiff's product], and unauthorized . . . imitations were mistakenly returned to plaintiff Ideal for repair." <u>Buzz Bee I</u>, 2014 WL 2006799, at *15. The Court did not require Plaintiff to produce <u>all</u> of the evidence that was present in <u>Ideal</u>, but Plaintiff lacked evidence showing secondary meaning. There was no survey data, no evidence of consumers mistaking Swimways' products for Plaintiff's products, and no evidence of advertising that led to buyer association with the source or the trade dresses.

11. The Court concluded that Plaintiff had not shown secondary meaning because it had not shown that consumers

6

associated its trade dresses with its company, its brand, its products, or a single anonymous source. Plaintiff has not shown that the Court made any errors, much less clear errors, of fact or law in Buzz Bee I. Plaintiff's motion for reconsideration regarding secondary meaning will be denied because "[t]his is the exact issue upon which this court opined in its previous [opinion]. The [Plaintiff's] motion simply raises a disagreement with this court's initial decision. Raising a mere disagreement with a court's prior decision, is insufficient . . . ." United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994) (denying motion for reconsideration).

12. Plaintiff also asserts that the Court erroneously found that Plaintiff had not shown a likelihood of irreparable harm. Plaintiff argues that the "loss of control of one's trade dress . . . has been recognized to be irreparable harm" and that the "potential for lost goodwill . . . is controlling." (Pl. Br. at 7 (emphasis in original).) Again, Plaintiff's argument lacks merit and reconsideration will be denied.

13. In Buzz Bee I, the Court noted that "the Supreme Court 'requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction,' not merely possible." 2014 WL 2006799, at *23 (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)). The Court held that "Plaintiff has not shown that it

7

is likely to suffer irreparable harm, i.e., harm that cannot be remedied with monetary damages, if an injunction does not issue." Id. at *24. For example, Plaintiff had not shown that "consumers blame[d] Buzz Bee for or associate[d] Buzz Bee with Swimways' product failures, if any" and had not shown that denying the injunction was likely to encourage manufacturers, competitors, and retail buyers to copy Buzz Bee's designs. Id.

    14.  Furthermore, the Court emphasized that Plaintiff had not shown any connection between issuance of an injunction and preventing irreparable harm. For example, Plaintiff "acknowledged that '[i]t is unlikely that Buzz Bee's relationship with Target will ever recover. . . .' It does not appear, therefore, that an injunction would impact whether Buzz Bee could sell its products through Target in 2015 . . . ." Id. The Court also noted that "Swimways agreed to offer its FLOOD FORCE line exclusively through Target, which indicates that Swimways will not be sending its allegedly infringing products to other retailers. In addition, Plaintiff has not provided evidence that any retailer has indicated that its willingness to sell Buzz Bee's products depends on the exclusivity of Buzz Bee's designs or on Plaintiff's ability to cease Swimways' production of the FLOOD FORCE line." Id. Plaintiff simply did not present evidence that irreparable harm was likely absent an injunction.

15.  Plaintiff cites several cases that are neither controlling nor apposite to support its argument that "the evidence presented by Buzz Bee supports a finding that irreparable harm is likely . . . ." (Pl. Br. at 7.) Plaintiff cites Microban Products Co. v. API Indus., Inc., Civ. 14-41, 2014 WL 1856471 (S.D.N.Y. May 8, 2014), in which the plaintiff had various federally registered trademarks. Even though the defendant's license to use the plaintiff's marks had expired, the defendant continued to use the marks and advertise that its products contained plaintiff's technology. The defendant had "engaged in a campaign of extortion" because it refused to pay the plaintiff for $750,876 worth of plaintiff's products until the plaintiff "agree[d] to extend the Trademark License, at no additional cost, for as long as it takes for [defendant] to sell its inventory . . . ." Id. at *3-*4. The defendant claimed it had an "absolute right to use the [plaintiff's] Marks indefinitely . . . ." Id. at *5. After concluding that the plaintiff had succeeded on the merits, the Microban court held that the plaintiff's "inability to control its Marks for a period of years, coupled with the threatened diminution of reputation and goodwill, as well as [defendant]'s avowed intention to continue infringing, demonstrates that it has no adequate remedy at law." Id.

9

16. Microban is wholly inapposite from the present case. In Microban, the defendant was using the plaintiff's federally registered marks without the plaintiff's consent, planning to continue doing so for years, and extorting the plaintiff. If anything, Microban supports the Court's decision in Buzz Bee I because, in Microban, the plaintiff's original motion for a temporary restraining order was denied because the plaintiff "failed to demonstrate that it would suffer irreparable harm during the pendency of its contemplated motion for a preliminary injunction." Id. at *4. The Microban plaintiff then obtained a permanent injunction after prevailing at the summary judgment stage. In Buzz Bee I, the Court denied Plaintiff's motion and noted that "[i]f Plaintiff believes that it can remedy these deficiencies after discovery is undertaken, Plaintiff is, of course, free to renew its motion." Buzz Bee I, 2014 WL 2006799, at *25. Microban thus exemplifies a case in which a plaintiff's initial application for equitable relief was denied and, at a later date upon a showing of irreparable harm, the plaintiff obtained injunctive relief. Microban does not support reconsideration of Buzz Bee I.

17. Plaintiff also cites Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc., Civ. 12-5423, 2014 WL 47465 (S.D.N.Y. Jan. 6, 2014), in which the plaintiff obtained a permanent injunction to protect its registered trade dresses after

10

prevailing at trial. The Audemars plaintiff had presented evidence of, inter alia, advertising campaigns to build its brand, bad faith on the defendant's part, and actual consumer confusion as to the source of defendant's infringing products. Such evidence was absent in the instant case.

18.   Plaintiff emphasizes Trebro Mfg., Inc. v. Firefly Equip., LLC, 748 F.3d 1159, 1164 (Fed. Cir. 2014), in which the Federal Circuit held that the district court abused its discretion in denying a preliminary injunction in a patent infringement case involving sod harvesters. The Federal Circuit held that there was a likelihood of infringement, that the patent was likely valid, and that the plaintiff had presented evidence to show irreparable harm. The irreparable harm evidence included showing that the plaintiff only sold eight harvesters per year, each lost sale represented $50,000 in lost profit, each lost sale could cause one layoff in a company of only 18 employees, the parties were direct competitors in a market that only had three players, each lost sale equated to a lost customer because harvesters are not replaced for many years, the defendant had already sold one of its infringing products to one of the plaintiff's former customers, and the defendant had pre-sold six more harvesters. In the present case, Plaintiff did not present such evidence of the likelihood of irreparable harm.

11

19.  Essentially, Plaintiff cites cases that are not controlling and do not show that the Court made a clear error of fact or law. Plaintiff is re-litigating its previous arguments and citing cases that illustrate the paucity of evidence that Plaintiff originally presented. A motion for reconsideration "should not provide the parties with an opportunity for a second bite at the apple." Tischio, 16 F. Supp. 2d at 532 (quotation omitted). Plaintiff's motion for reconsideration of Buzz Bee I's irreparable harm holding is denied.

20.  Plaintiff also argues that the Court erred in holding that the public interest did not favor an injunction. The Court held that Plaintiff had not shown that consumers were likely to be confused about the sources of Defendants' and Plaintiff's respective products because, while the products were similar in appearance, Plaintiff had not shown that its trade dresses had any secondary meaning. Plaintiff's reconsideration motion does not show that this holding was erroneous in fact or law.

21.  Finally, to prevail on a motion for preliminary injunctive relief, "the moving party must demonstrate that each of the following factors favors the requested relief: (1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction

12

is issued; and (4) the public interest." McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 356-57 (3d Cir. 2007) (quotation omitted). In Buzz Bee I, the Court held that Plaintiff had not shown secondary meaning, a likelihood of irreparable harm, or that the public interest favored injunctive relief. Even if one of these holdings was clearly erroneous, which is not the case, Plaintiff certainly has not shown that all of them were and, thus, Buzz Bee I still stands.

    22.  In Buzz Bee I, the Court noted that Plaintiff could refile its motion if it could remedy the evidentiary deficiencies after discovery. Instead, Plaintiff re-litigated its previous arguments without showing that the Court made any clear errors in fact or law, that there is new evidence, or that there has been an intervening change in controlling law. Plaintiff's motion is denied.

    23.  An accompanying Order will be entered.

|  |  |
|---|---|
| **August 20, 2014** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
|  | Chief U.S. District Judge |